Robinson v. Hurley.

## ROBINSON v. HURLEY.

1. PLEDGES AS COLLATERAL SECURITY. In the absence of any contract controlling the rights of the parties, a pledgee holding a pledge as collateral security, may, after the maturity of the debt secured, elect to pursue one of three remedies : 1. Proceed personally against the pledgor for his debt, without selling the pledge : 2. By bill in Chancery for a judicial sale of the property—a foreclosure ; 3. Sell the pledge without judicial proceedings upon giving reasonable notice to the debtor to redeem.

2. SAME. Where the pledgee executed to the pledgor a receipt for the pledge, in which it was stipulated, that should the note for the collateral security of which the pledge was given, " not be promptly met at maturity," the pledgee reserves "the right and privilege of " disposing of the pledge "at private sale," the proceeds to be applied to the satisfaction of the debt, and the balance, if any thereafter remain, to be paid to the pledgor, it was held :

1. That the agreement waived or changed the legal rights of the parties only in dispensing with notice to the pledgor to redeem before sale.

2. That it did not require a sale at the maturity of the debt.

3. That the measure of the liability of the pledgee to the pledgor, upon a conversion of the pledge, was its value at the time of such conversion.

*Appeal from Dubuque District Court.*

THURSDAY, APRIL 11.

THE plaintiff brought his suit to recover $554.69 as the

amount due on a promissory note. Defendant pleaded payment and set-off founded upon the following receipt to-wit :

Received, Dubuque, August 6th, 1857, of John Hurley, two orders on the treasurer of Dubuque City, both orders dated August 4th, 1857. One is numbered 4146 calling for five hundred dollars ; the other is No 4148 calling for two hundred and fifty dollars. The above orders are placed in my possession as security for a certain note, dated as above, calling for five hundred and forty-six dollars and fifty cents, ninety days after date. Should the said note not be promptly met at maturity then I reserve the right and privilege of disposing of said city orders at private sale, and to appropriate so much of the sale of said bonds as shall fully satisfy said note, interest and costs, and pay the balance, if any, to the said John Hurley.

(Signed,)                    J. M. ROBINSON.

At the maturity of the note, defendant made default in payment. The plaintiff did not at that time, to-wit, on the 9th of November, 1857, when the note matured, sell the city scrip described in the above receipt, but deferred the same till the 10th of May following, when he sold the same for forty-five cents on the dollar.

On the trial the defendant proved, against the objection of the plaintiff, that at or about the time that the note matured the city scrip in question was worth in the market from seventy-five to eighty cents on the dollar. The plaintiff then offered to prove by two witnesses that in May, 1858, about the time he sold said scrip it was worth only about forty cents on the dollar. This evidence was declared inadmissable by the court, and exceptions taken to both rulings. The jury found a verdict of seventy-seven dollars and fifty cents for the defendant. A motion for a new trial, based upon the alleged errors of the court in admitting and rejecting certain testimony, and in its charge of the law of the case to the jury, was overruled; and the cause is appealed to this court by the plaintiff.

*Samuels, Allison & Crane,* for the appellants, to the point that the measure of damages was the value of the scrip at the time it was converted, cited, Sedg. Dam. 481; *Kennedy* v. *Whitehead,* 4 Pick, 466; *Pearce* v. *Benjamin,* 14 Pick. 356; *Lillard* v. *Whittaker,* 3 Bibb 92; *Watt* v. *Potter,* 2 Meeson, 75; *Cutter* v. *Fanning,* 2 Iowa, 580.

*Wilson, Utley & Doud,* for the appellee. No argument on file.

LOWE, C. J.—Upon the foregoing facts the court, at the request of the defendant, gave the following instructions as the law of this case, to-wit: That under the receipt offered in evidence by defendant, if the plaintiff sold the scrip at all, he was required by the terms of the receipt to sell the same at or about the time of the maturity of the note; and that if they (the jury) find from the evidence that said plaintiff had not sold the scrip, he was liable for the value of said scrip at or about the time of the maturity of the note. The court also refused to charge the jury that the value of the scrip at the time it was sold by the plaintiff was the measure of his liability to the defendant for the same.

If the plaintiff acted tortiously or misappropriated the scrip in disposing of it at the time he did, the above rule of damages would seem to be proper and just. But if it was his right under the law which governs pledges, even as modified by the contract of the parties in this case, to sell these collateral securities at the time and under the circumstances which he did, then there was no misappropriation and a different criterion of damages obtains, to-wit, the value of the scrip at the time of its conversion.

That we may arrive at a better understanding of the rights, duties and obligations of the parties under the receipt in question, let us inquire what they would be under the law in the absence of such a contract. After the debt falls due the pledgee under the law has his election to pursue one of three courses: *First,* to proceed personally

Robinson v. Hurley.

against the pledgor for his debt without selling the collateral security, or second, to file a bill in chancery and·have a judicial sale under a regular decree of foreclosure ; or third, to sell without judicial process, upon giving reasonable notice to the debtor to redeem. 2 Kent (9 ed.) 785; 1 P. Wms. 261; 2 Atk. 3ɔ3. The plaintiff in executing said receipt did not waive his right of adopting either of the above methods to satisfy his claim. The only change made in the rights and obligations of the parties by this instrument, was simply to dispense with notice to the debtor to redeem before the creditor could sèll. There is nothing in the language or terms of this receipt which obliged the plaintiff to sell these collaterals at the maturity of the note. He simply reserved the right to do so, a right which the law gave him, without such reservation, upon giving notice to redeem. A postponement of the exercise of this right is a thing of which the debtor cannot very well complain; it only enlarges his opportunity to redeem and thereby prevent any sacrifice that might result from a forced sale of the pledge. The depreciation in this case which the scrip in question suffered between the maturity of the note and the sale of the same, was without the fault or power of prevention on the part of the plaintiff. He was only bound to that attention and dilligence in the preservation of the thing pledged which a careful man bestows upon his own property, for the reason that the arrangement or contract was reciprocally beneficial to both parties. We conclude therefore that the plaintiff in selling the collateral securities at the time and under the circumstances which he did, violated no obligation or duty growing out of the understanding of the parties, or expressed by the receipt, or law itself. And if we are right in this conclusion, it follows that the measure of his liability for said scrip is the value thereof at the time of conversion. This rule of damages in cases of this kind is well established. See Sedgw. on Dam. 365–6 and 480–1, and authorities there cited.

Judgment reversed and new trial granted.