[No. 15790.  Department Two.—July 2, 1895.]

## J. N. KNOWLES, RESPONDENT, v. WILLIAM SAN-DERCOCK ET AL., APPELLANTS.

CORPORATIONS — LIABILITY OF STOCKHOLDERS — AMOUNT OF STOCK OUT-STANDING—BURDEN OF PROOF.—In an action to enforce the liability of the stockholders of a corporation it is incumbent upon the plaintiff to prove the whole amount of the stock outstanding to enable the court to determine the liability.

ID.—SUFFICIENCY OF PROOF—BOOKS OF CORPORATION—TESTIMONY OF SEC-RETARY.—A stock certificate book, stock ledger and stock journal of the corporation, together with the testimony of the secretary of the corpo-ration that they contain the names of all the stockholders, and that no other persons appeared on the books of the company as having owned stock during any of the times mentioned in the complaint, are suffi-cient to prove the whole amount of stock outstanding, and the dates of the ownership of stock by the defendants.

ID.—STOCK AND TRANSFER BOOK—MISNOMER—STOCK CERTIFICATE BOOK. Where the stock certificate book offered in evidence appears to have been designed for a stock and transfer book, and its contents, so far as set out in the record, correspond with what is required by the code, in respect of a stock and transfer book, the fact that the book is not named as the code requires is not material.

ID.—SUBSCRIPTION BOOK—PROOF OF STOCK SUBSCRIBED.—The code does not require that there shall be a subscription book kept by the corpora-tion, nor direct how subscriptions shall be made, and, where it does not appear that the corporation had any other book showing who the sub-scribers were than the stock books offered in evidence, and the suit is by strangers to the corporation against its stockholders, the books kept by the corporation, together with the testimony of the secretary that they contained the names of all the stockholders, are sufficient proof of the stock subscribed and outstanding.

ID.— PLEADING — DEBT OF CORPORATION — LOAN EVIDENCED BY NOTE — BASIS OF LIABILITY OF STOCKHOLDERS—INTEREST ON NOTE.—In an action to enforce the liability of stockholders for the debts of the corporation the debt to be alleged is the debt of the corporation, and it may be pleaded in the usual mode, and a complaint alleging that on a day named a person named at the special instance and request of the corpo-ration loaned to it a specified sum, which the corporation then and there promised to pay within two years after said date with interest at the rate of seven per cent per annum, and executed its promissory note to secure the same, which note is set out in the complaint, the indebtedness to the corporation is correctly pleaded, and the complaint is not objectionable on the ground that it does not show when the debt accrued, and the liability of the stockholders in such a case is no more based on a supposed original implied contract of loan than on the note; but a showing that the debt of the corporation was incurred while the defendant was a stockholder fixes his statutory liability, and he is liable

for his proportion of the interest specified in the note until the statute of limitations has run in his favor.

ID.—NATURE OF STOCKHOLDER'S LIABILITY—WRITTEN CONTRACT OF CORPORATION—PLEADING.—The stockholders of a corporation are perhaps not strictly liable on the contract of the corporation, but on the statute creating the liability; but, if the debt of the corporation was created by a written contract, the debt of the corporation based on the contract must be pleaded in the usual mode.

ID.—ASSIGNMENT OF NOTE—TRANSFER OF DEBT.—The assignment of a note of the corporation given to secure a loan carries with it the debt of the corporation for the money loaned, and sustains a finding that the note and the original debt passed by assignment to the plaintiff.

ID.—PAYMENT BY STOCKHOLDERS—TRANSFER OF NOTE—DISCHARGE of DEBT.—Voluntary payments by stockholders of the amount of their supposed proportionate liability of all the debts of the corporation, for the benefit of the creditors, to the president of the corporation, are not paid to the corporation, and the money is not in its possession, and such payments do not authorize the president to pay out the money in satisfaction of any one debt, and cannot be held to discharge a note of the corporation for which other stockholders are sued upon their proportion of liability therefor, nor is the note discharged by reason of the fact that the president of the corporation used the money with other borrowed money to take up the note, intending to assign it to the plaintiff for the purpose of causing suit to be brought on it against the stockholders and not intending to pay the note and such transaction is not a transaction of the corporation.

ID.—LIABILITY OF STOCKHOLDERS FOR INTEREST—NOTE OF CORPORATION—ORIGINAL AGREEMENT NOT IN WRITING.—Where the originial indebtedness consisted of an account for moneys loaned and expended for the benefit of the corporation for which the corporation gave its note with interest, when the interest on the note became a legal debt against the corporation it became a debt of the stockholders, and it cannot be objected that the claim evidenced by the note contains some charges for interest which cannot be recovered from the stockholders because the original agreement to pay the interest was not in writing.

ID.—RIGHT OF STOCKHOLDER AS CREDITOR TO ENFORCE LIABILITY.—The fact that a creditor who seeks to enforce the liability of stockholders is also a stockholder does not deprive him of the right to sue other stockholders for their proportionate share of the liability.

ID. — CLAIM FOR MONEY LOANED AND EXPENDED — INTEREST. — Where a cause of action against the corporation upon which stockholders are charged with liability was for moneys lent to and expended for the use of the corporation the items of the account bear interest by virtue of the statute, and the fact that the statement of the balance of account includes interest which had accrued on the money lent and expended, and that there is no mention of interest in the complaint except upon the balance of account, sufficiently shows an indebtedness on the part of the corporation for the interest for which the defendant sued, as stockholders are liable for their proportion.

ID.—DEBT OF CORPORATION SECURED BY MORTGAGE—LIABILITY OF STOCKHOLDER.—The fact that the debt of the corporation is secured by mort-

gage which the creditor holds and is unforeclosed, does not affect the liability of the stockholder whose liability for the debt of the corporation is primary and not that of a surety, and he is not injured nor benefited by the fact that the corporation has given security, nor by the fact that the debt was renewed.

ID. — LIABILITY OF CORPORATION AS STOCKHOLDER — ULTRA VIRES SUBSCRIPTION TO STOCK.—A private corporation has no implied authority to invest in shares of another private corporation, and, in this state, a corporation is forbidden to engage in any business other than is expressly authorized in its charter or the law under which it is organized, and a corporation organized for the purpose of manufacturing, importing, buying, and selling furniture and upholstery cannot hold stock in a hotel corporation, and its subscription to its stock is *ultra vires* and void, and it cannot be charged with liability as a stockholder of the hotel corporation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Edward P. Cole*, and *Ernest Graves*, for Appellants Goldtree and Hollister.

The liability of stockholders is solely the creature of the statute law, and it must be exercised upon the conditions and within the limits which the statute provides. (Civ. Code, sec. 322; *Hunt* v. *Ward*, 99 Cal. 616; 37 Am. St. Rep. 87.) The twenty-five thousand dollar note to the Anglo-Californian Bank which was paid and extinguished with money voluntarily paid by shareholders ceased to be a binding obligation. (*James* v. *Yaeger*, 86 Cal. 187; *Gordon* v. *Wansey*, 21 Cal. 79; Civ. Code, sec. 1474.) A debt paid or discharged, being no longer an obligation of the corporation, no stockholders can be liable for any thing thereon. (*Young* v. *Rosenbaum*, 39 Cal. 654; *San Jose Bank* v. *Pharis*, 58 Cal. 380.) The only remedy of the stockholders making the payment would be in equity for contribution or for subrogation to the rights of the bank. (*Redington* v. *Cornwell*, 90 Cal. 49.) Suits can only be maintained against a stockholder on the original debt, and not on a note or other evidence of the debt. (*Hunt* v. *Ward*,

*supra; Griffith* v. *Green,* 13 N. Y. Supp. 470; *Parrott* v. *Colby,* 6 Hun, 55; 71 N. Y. 597; *Stilphen* v. *Ware,* 45 Cal. 111.) The debt of the hotel company to the First National Bank of San Luis Obispo was paid, and there can be no liability against a stockholder therefor. (*San Jose Bank* v. *Pharis, supra.*) If the debt was not paid but only secured by note and mortgage plaintiff cannot sue the stockholder, because it cannot sue the bank except to foreclose the mortgage and docket the judgment for the deficiency. (*Barbieri* v. *Ramelli,* 84 Cal. 154; *Crim* v. *Kessing,* 89 Cal. 487; 23 Am. St. Rep. 491; *Biddel* v. *Brizzolara,* 64 Cal. 362; *Powell* v. *Patison,* 100 Cal. 239; *Mitchell* v. *Beckman,* 64 Cal. 121, 122.) The right of action by a creditor against the stockholder accrues at the same time as the right against the corporation and not before. (*Davidson* v. *Rankin,* 34 Cal. 505; *Young* v. *Rosenbaum, supra.*) Plaintiff must allege and prove the whole amount of stock subscribed so as to enable the court to determine the liability. (*Bidwell* v. *Babcock,* 87 Cal. 29; *Morrow* v. *Superior Court,* 64 Cal. 383.) The certificate book was not a book required to be kept by the corporation and was not admissible. (1 Greenleaf on Evidence, sec. 493.) There is no evidence of the whole amount subscribed, and the law is that a stockholder is only liable for his share of the corporate debts, proportionate to the whole of the subscribed, and not the issued, capital stock. (Code Civ. Proc. sec. 322; *California Southern Hotel Co.* v *Callender,* 94 Cal. 120; 28 Am. St. Rep. 99.)

*Sawyer & Burnett,* for Appellant, California Furniture Manufacturing Company.

The California Furniture Manufacturing Company had no power to subscribe to the stock of the California Southern Hotel Company, and its attempted subscription and holding of stock therein was *ultra vires,* and void. (Const., art. XII, sec. 9; Civ. Code, secs. 283, 354, 355; Angel & Ames on Corporations, secs. 111, 392; *Vandall* v. *South San Francisco Dock Co.,* 40 Cal. 88; 1 Mora-

wetz on Corporations, secs. 433, 434; 1 Spelling on Corporations, sec. 172; Taylor on Corporations, sec. 267; Brice on Doctrine of Ultra Vires, sec. 133; 1 Beach on Private Corporations, sec. 522; *Coleman* v. *San Rafael etc. Co.*, 49 Cal. 520; *Hutchinson* v. *State Investment Co.*, 53 Cal. 622; *Pearce* v. *Madison etc. R. R. Co.*, 21 How. 442; *Oregon Ry. & Nav. Co.* v. *Oregonian Ry. Co.*, 130 U. S. 1; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 259; 41 Am. Rep. 221; *Pennsylvania R. R. Co.* v. *St. Louis etc. R. R. Co.*, 118 U. S. 290; *Board etc. Tippecanoe County* v. *Lafayette R. R. Co.*, 50 Ind. 85; *Franklin Co.* v. *Lewiston Institution for Savings*, 68 Me. 43; 28 Am. Rep. 9; *Pearson* v. *Concord R. R. Corp.*, 62 N. H. 537; 13 Am. St. Rep. 590; *Lucas* v. *White Line etc. Co.*, 70 Iowa, 541–47; 59 Am. Rep. 449; *People* v. *Chicago Gas Trust Co.*, 130 Ill. 268, 283–85; 17 Am. St. Rep. 319; *Lake Erie Valley Ry. Co.* v. *Iron Co.*, 46 Ohio St. 44; *Central R. R. Co.* v. *Pennsylvania R. R. Co.*, 31 N. J. Eq. 475; *Bowman Dairy Co.* v. *Mooney*, 41 Mo. App. 665; *Denny Hotel Co.* v. *Schram*, 6 Wash. 134; 36 Am. St. Rep. 130; *Central Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24; *Hazlehurst* v. *Savannah etc. R. R. Co.*, 43 Ga. 57; *Mechanics' etc. Bank* v. *Meridan Agency*, 24 Conn. 159.)

*Carter P. Pomeroy*, for Respondent.

The books of the corporation were admissible in evidence to show the number of shares subscribed for, the names of the stockholders, and the amount of stock held by them, and, in the absence of evidence to impeach them, were controlling. (*Evans* v. *Bailey*, 66 Cal. 112; Civ. Code, sec. 322.)    The liability of the defendants as stockholders was not extinguished by the voluntary payments made by other stockholders of their proportionate amount of the total liabilities of the corporation, nor by the purchase of the note by Howard and its assignment to the plaintiff. (*Redington* v. *Cornwell*, 90 Cal. 49.)    The liabilities of all the stockholders were separate and distinct, and not joint.    (Civ. Code, sec. 322.) The assignment of the note to the plaintiff operated as

an assignment of the original indebtedness of the hotel company, and of the individual liabilities of the stockholders. (*Wiggins* v. *McDonald*, 18 Cal. 126; *Brown* v. *Scott*, 25 Cal. 189, 197; *Lahmers* v. *Schmidt*, 35 Minn. 434.) Goodall, Perkins & Company were entitled to interest on their accounts from the date of the advance of the money. (Civ. Code, secs. 1914, 1917; *Marshall* v. *Levy*, 66 Cal. 236, 238; *Heald* v. *Hendy*, 89 Cal. 632.) The fact that Goodall was a stockholder in the hotel company does not prevent the firm of Goodall, Perkins & Company from enforcing the indebtedness against the other stockholders for their separate liability. (Civ. Code, sec. 322; *Borland* v. *Haven*, 37 Fed. Rep. 394; *Smith* v. *Londoner*, 5 Col. 365.) The fact that the First National Bank of San Luis Obispo held a mortgage for money loaned by it to the hotel company, which it could only foreclose under section 726 of the Code of Civil Procedure, does not affect the stockholder's liability, which is separate and distinct from that of the corporation, and may be enforced in a separate action by a several judgment. (Civ. Code, sec. 322.) The subscribers in the California Manufacturing Company are liable as stockholders in the California Southern Hotel Company. (*Kennedy* v. *California Sav. Bank*, 101 Cal. 495; 40 Am. St. Rep. 69; *Evans* v. *Bailey*, *supra*.)

TEMPLE, J.—This action was brought by the assignee of numerous creditors of the California Southern Hotel Company, a corporation, against certain stockholders, to enforce their liability as stockholders for the debts of the corporation.

The complaint contained thirty-four separate causes of action. Prior to the trial one appellant, the California Furniture Manufacturing Company, paid its proportion of the indebtedness contained in the first thirty causes of action, and went to trial on the last four. The other appellants, Nathan Goldtree, Morris Goldtree, Isaac Goldtree, and J. H. Hollister, contested all causes of action. Judgment went for plaintiff on all contested

issues.   All the appellants moved for a new trial, which being denied, each appeals from the whole of the several judgment against him, though all the points made by them on this appeal have reference to the last four causes of action.

In each separate cause of action it is alleged that six hundred and ninety shares of the capital stock of the California Southern Hotel Company, and no more, had been continuously subscribed for during all the times mentioned in the complaint, and that the appellants Goldtree had continuously been the owners of one hundred shares, Hollister of twenty shares, and the California Furniture Manufacturing Company of twenty shares.   The court found that seven hundred and fifty-three shares had been continuously subscribed for, and that appellants had during such time been the owners of the number of shares charged.

Appellants Goldtree and Hollister attack the finding as to the number of shares subscribed.

It was incumbent upon the plaintiff to prove the whole amount of stock outstanding to enable the court to determine the liability.   For that purpose plaintiff offered in evidence the stock certificate book, to which the defendants objected on the ground that it was immaterial, irrelevant, and incompetent, and because it was not properly kept, and was not one of the books provided for by the Civil Code.   The objection being overruled defendants reserved an exception, and the book was received.   The entries were in form as follows:

" Certificate No. 1; No. of shares, 10; issued September 25, 1888, to William Sandercock; not canceled."

The stock ledger and stock journal were also put in evidence, and the secretary of the corporation testified that they contained the names of all the stockholders; also that no other persons appear on the books of the company as having owned stock during any of the times mentioned in the complaint.

It is contended that this evidence is not only incompetent, but that, admitting its competency, it is insuffi-

cient. It is claimed that it is incompetent because the books are not corporation books, required to be kept by the provisions of sections 377 and 378 of the Civil Code, and are not *quasi* public records which, by any rule of law, is made binding on the stockholders.

The evidence, it is said, is not sufficient because there may be other *subscribers* for stock besides those whose names appear in these books, and the liability of stockholders is made to depend upon the number of shares subscribed for. The burden, it is said, was on the plaintiff not only to show that there were certain stockholders, which, at the most, is all the books introduced show; but also to prove that no more shares had been subscribed for.

Section 377 of the Civil Code requires all corporations for profit to keep a journal of all meetings of the directors, members, or stockholders. Section 378 prescribes that in addition such corporations shall " keep a book to be known as the ' Stock and Transfer Book,' in which must be kept a record of all stock; the names of the stockholders or members, alphabetically arranged; installments paid or unpaid; assessments levied and paid or unpaid; a statement of every alienation, sale, or transfer of stock made, the date thereof, and by and to whom; and all such other records as the by-laws prescribe."

The book introduced seems to have been designed for the stock and transfer book. It is true that its contents are not shown here further than is above stated. So far as its contents are set out it corresponds with what is required by the code. The fact that the book is not named as the code requires is not material.

The code does not require that there shall be a subscription book, nor direct how subscriptions shall be made.

It does not appear that this corporation had any other book showing who the subscribers were. The suit is by strangers to the corporation against its stockholders. I think these books, together with the testimony, sufficient. (*Evans* v. *Bailey*, 66 Cal. 112.)

The thirty-first cause of action is alleged to be: "That on the 19th day of November, 1888, Ignatz Steinhart, at the special instance and request of said California Southern Hotel Company, loaned to the said California Southern Hotel Company the sum of $25,000, which sum the California Southern Hotel Company then and there promised to pay to said Ignatz Steinhart two years after the said 19th day of November, 1888, with interest on same at the rate of seven per cent per annum until paid." The complaint then proceeds to state that to secure the same the corporation gave its promissory note, which it set out. It is also averred that Steinhart assigned the same to plaintiff.

The objections urged to the judgment on this cause of action are:

1. That the suit is brought on the note and not on the contract of loan, which it is said is the primary indebtedness for which only the stockholders are liable; 2. That the original indebtedness has not been assigned to plaintiff; and 3. That the debt had been paid.

1. The complaint, as appears from the above, sets out the original indebtedness, and also avers the execution of the note of the corporation. I think this is correct pleading under the code, and, if the allegations in regard to the note are surplusage, they do not harm.

The complaint is not objectionable on the ground that it does not show when the debt accrued.

Perhaps some confusion has arisen on this subject by expressions to the effect that the stockholder's liability is not that of a surety but that of an original debtor. These expressions, from the point of view from which they were made, correctly state the law. Nevertheless, the statute expressly makes the stockholder *liable* for the *debts* of the corporation, and it would not be good pleading to aver that the stockholder borrowed the money or bought the goods for which the indebtedness arose. The debt to be alleged is the debt of the corporation, and I see no reason why it may not be pleaded in the usual mode. The original contract here, upon which the in-

debtedness arose, was the note, and the allegation of it is a sufficient allegation of the debt of the corporation. Whether the presumption would be that the indebtedness was incurred at the time the note was given need not now be decided, for the further fact is alleged, showing when the debt was incurred.

The stockholder is, perhaps, not strictly liable on the contract, but on the statute. Still, if the debt of the corporation is created by a written contract, the debt of the corporation must be pleaded in the usual mode. The liability of the stockholder in this case is no more based on a supposed original implied contract than on the note. The proper averment of a debt is against the corporation, not against the stockholder, and the showing that it was incurred while defendant was a stockholder fixes his statutory liability. Suppose, for instance, the note called for interest at two per cent per month, it cannot be doubted that the stockholder would be liable for his proportion of all this interest until the statute of limitation would run in his favor. The debt of a corporation, which is a condition precedent to the liability of the stockholder, must be shown by proper averment.

2. The evidence fully sustains the finding that the note and the original debt, if there is a distinction, passed by assignment to plaintiff.

3. It is contended that the indebtedness to Steinhart had been paid by the corporation. This contention is based on the following facts: When Howard became president of the hotel corporation he found it very much in debt. The stockholders were unwilling to pay assessments or to make voluntary contributions. Thereupon he was advised to have the debts assigned and bring a suit to enforce the individual liability of the stockholders. He issued a circular to the stockholders, stating the condition. Thereupon some stockholders voluntarily paid him the amount of their supposed proportionate liability and took receipts in the following form:

"SAN FRANCISCO, November 17, 1890.

"Received of [name of stockholder] —— dollars, the sum being his assumed proportion of the indebtedness of the California Southern Hotel Company, which indebtedness is considered equal to $100 per share on the issued shares of said hotel company.

"JOHN L. HOWARD,

"President."

Howard, when on the stand as a witness, said: "The amounts paid in by the stockholders were for the benefit of the creditors of the stockholders as against their proportion of the entire indebtedness."

There was no assessment or call in pursuance of which this money was paid, and it is manifest that the stockholders who paid intended that the payment should protect them from their liability in the proposed litigation.

But as their liability was not joint, and as each stockholder owed a share of each debt, the conditions under which the money was paid to Howard did not authorize him to pay it out in satisfaction of any one debt which would constitute an inconsiderable proportion of the entire indebtedness.

Nor did Howard pretend to pay the note for the corporation. He says he borrowed the money and took the note up for the West Coast Land Company, intending when he did so to assign it to plaintiff for the purpose of causing suit to be brought on it. Therefore, it was not intended as a payment of the note, and it was not a transaction of the hotel company.

The money was not paid to the corporation and was not in its possession. It was not intended to be used to pay the debts of the corporation, but to discharge the proportionate liability of the stockholders who paid it. It was held as the money of the stockholders who paid it, and was not the money of the corporation. If applied to the payment of the debt to the extent of the proportionate shares of the stockholders who paid, that would not help appellants, for their shares of the indebtedness would be unaffected by such an application of it.

The thirty-second cause of action is for $33,069.61, due to Goodall, Perkins & Co., for which the corporation gave its note. The allegations of the complaint in regard to it are similar to those in regard to the cause of action set out in the thirty-first cause of action, and the objections to the pleading, so far as they are the same, need not be further noticed.

It is said that the claim evidenced by the note contains some charges for interest which cannot be recovered from the defendants because the agreement to pay is not in writing. If so, when the interest became a legal debt against the corporation by its note, it became a debt of the stockholders.

The assignment of the note carried with it the original debt.

The objection is made that suit cannot be maintained upon this claim because it was a debt due to Goodall, who was also a stockholder and, it is claimed that the statute was not intended for the benefit of a stockholder who is also a creditor. The objection is founded upon certain decisions made by the courts of New York, in cases growing out of statutes which made the stockholders liable jointly and severally for all the debts of the corporation. It was held that this put the corporators on the footing of partners, and, as a partner cannot sue at law for a debt due him from the partnership, they could not under such a law bring suit against a stockholder. Our law is entirely different, and the absurd consequences indicated cannot result. If each stockholder is liable only for his proportionate share of each debt, and if, having paid it, he becomes a creditor of the corporation, still he can recover nothing from a stockholder who has already paid his share of the debt.

The thirty-third cause of action is for the balance of an account of $3,575.09, for moneys lent and for moneys paid, laid out, and expended for the use of the hotel corporation by Goodall, Perkins & Co. The only serious question in regard to this count is that it includes $225 interest which had accrued on the money lent,

paid out, and expended by Goodall, Perkins & Co., and there is no mention of interest in the complaint.

The count, as before stated, is for the balance of an account, and ought to have specified the nature of the items composing it. This cannot, however, be a very serious matter. It is only by force of precedents and established practice that such pleading is construed to state a cause of action at all. It can hardly be said such a complaint states the facts constituting a cause of action. Defendant can demand a bill of particulars, and only by so doing can he really learn the facts. But all the items indicated bear interest by virtue of the statute. The complaint does show an indebtedness on the part of the corporation for the interest, and also that defendants as stockholders are liable for their proportion thereof.

The thirty-fourth cause of action is for $5,668.17, balance of an account for moneys lent and for moneys paid, laid out, and expended by the First National Bank of San Luis Obispo for the hotel corporation.

It is contended that this debt had been paid by the corporation, or at least had been secured by a mortgage which the creditor still holds and which is unforeclosed.

The hotel corporation executed to the bank a mortgage for the sum of $15,000, which the witnesses testified was intended as collateral security for what the corporation then owed the bank, and for further advances. The bank, however, gave the corporation credit on its books for $15,000, and deducting the debt showed a balance of $9,529.09 cash on deposit to the credit of the hotel corporation. It is claimed that this amounted to payment. There was no agreement that it should be considered payment, but had there been it would have made no difference. The debt was not paid, but at most renewed, and no doubt the stockholder can be made to pay his proportion of it.

The note was due but the mortgage had not been foreclosed. This fact constitutes no defense for defendants. They are not affected by the fact that because

of the mortgage only an action to foreclose could be brought against the corporation. The mortgage only affects the remedy against the mortgagor—the corporation. The liability of the stockholder, as has already been said, is primary in the sense that he is not a surety. He is not injured nor is he benefited by the fact that the corporation has given security. (*Sonoma Valley Bank* v. *Hill*, 59 Cal. 107.)

It is contended by the California Furniture Manufacturing Company that the subscription of that corporation for twenty shares of the stock of the hotel corporation was *ultra vires*, in the absolute sense and is void. It was admitted that on the twenty-sixth day of October, 1888, the hotel corporation issued to the appellant corporation twenty shares of stock and received two thousand dollars therefor, and that the stock is still retained by appellant.

The articles of the hotel corporation declare "that the purposes for which it is formed are the building, owning, and operating an hotel in the city of San Luis Obispo."

The articles of the defendant corporation declare that the " objects for which this corporation is formed are to manufacture, import, buy, and sell furniture and upholstery; and to carry on said business in all its branches, including the dealing in all materials appertaining to said business."

It will be seen that the defendant corporation is not authorized to deal in stocks or to become a stockholder in other corporations. The general rule is undoubtedly that a corporation cannot own corporate stocks unless expressly authorized. Indeed, it has been said that statutes in regard to the formation of corporations do not authorize any but natural persons to become corporators. (Morawetz on Corporations, sec. 433.)

"A private corporation has no implied authority to invest in shares of another private corporation. If this were so, it might, by an easy process, transfer its resources to another." (Spelling on Corporations, sec.

172. See, also, Taylor on Corporations, sec. 267; Brice on Ultra Vires, 133; *Pearson v. Concord R. R. Corp.*, 62 N. H. 537; 13 Am. St. Rep. 590; *Lake Erie V. Ry. Co. v. Iron Co.*, 46 Ohio St. 44; *Central R. R. Co. v. Pennsylvania R. R. Co.*, 31 N. J. Eq. 475; *Denny Hotel Co. v. Schram*, 6 Wash. 134; 36 Am. St. Rep. 130; *Hazelhurst v. Savannah R. R. Co.*, 43 Ga. 57; *People v. Chicago Gas Co.*, 130 Ill. 268; 17 Am. St. Rep. 319; *Franklin Co. v. Lewiston Inst. for Savings*, 68 Me. 43; 28 Am. Rep. 9.)

In this state a corporation is forbidden to engage in any business other than is expressly authorized in its charter or the law under which it is organized. (Const., art. XII, sec. 9.)

To own stock in another corporation is to become interested in the business of such corporation. A stockholder is engaged in the business of the corporation within the meaning of this section of the constitution. He has a voice in the management—may, in fact, control such business—and is, of course, liable for the debts incurred while he is a stockholder.

The above provision makes all acts which are wholly without the business of the corporation unlawful.

The only reply make by respondent to this point is that the subscription is sustained by *Kennedy* v. *California Savings Bank*, 101 Cal. 495, 40 Am. St. Rep. 69. In this, I think, counsel is mistaken. It was there held that the bank rightfully invested its funds in the shares of other corporations. It has been held that banks and other corporations whose business it is to loan money may take stock in other corporations as collateral, and in the process of realizing its securities may become the owner of them. Also, in some cases, such institutions may invest temporarily surplus funds in such securities. It has, however, been held as to such corporations that they cannot permanently invest in the stock of other corporations unless authorized by their articles.

The corporation defendant has no funds to invest. Its capital is for the purpose of carrying on its business, no part of which consists in getting interest on money

or making a profit in outside investments. Its sole purpose is to earn a profit for its stockholder through the business to be conducted by itself as specified in its articles. Its subscription, therefore, was *ultra vires* and void.

The judgment and order are affirmed as to all the appellants except the California Furniture Manufacturing Company, and as to it the judgment and order are reversed.

McFARLAND, J., and HENSHAW, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order refusing a hearing in Bank.